# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

|   |   |   |
|---|---|---|
| PATRICK W. CHALFANT and R.J. PRESTON, individuals, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 05-CV-0549-CVE-SAJ |
| BARRY TUBB, an individual, and MADRUGADA PRODUCTIONS, INC., a corporation, | ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

Now before the Court is Defendants' Motion to Dismiss (Dkt. # 17) and Plaintiffs' Motion to Strike (Dkt. # 42). Defendants ask the Court to dismiss plaintiffs' complaint in its entirety, or in the alternative, defendants seek dismissal of specified claims. Plaintiffs request that the Court strike exhibit B attached to defendant's reply (Dkt. # 41), a letter from plaintiff Patrick Chalfant to defendant Barry Tubb, because it attempts to provide factual support for defendants' arguments beyond the allegations of the complaint.

### I.

Plaintiffs filed this action for copyright infringement alleging that defendants produced and distributed a film based upon a screenplay written by plaintiffs. Plaintiffs Patrick W. Chalfant ("Chalfant") and R.J. Preston ("Preston") wrote a screenplay entitled "Blood Trail" and obtained a copyright from the United States Copyright Office in 1995 for it. The screenplay combines elements of Westerns and horror films, in addition to Native American cultural themes, and is

approximately 100 pages in length.  The copyright for the screenplay, registration number PA 771-729, was issued on November 9, 1995 and is jointly held by plaintiffs.

In 1995, Barry Tubb, owner of Madrugada Productions, Inc. ("Madrugada"), requested a copy of the screenplay from Preston.  After reading the screenplay, Tubb expressed interest in producing a film based on the screenplay and Tubb, Chalfant, and Preston held a meeting in November 1995 at Preston's home in Fay, Oklahoma.  Tubb mentioned the possibility that he would seek plaintiffs' permission to use the screenplay for his film, but stated that contractual details could be worked out after the film was produced. Tubb subsequently called Chalfant several times asking for permission to use the screenplay for a movie, but refused to discuss contractual terms until he could find a distributor for the film.  Plaintiffs allege that they notified Tubb of their copyright as soon as it was registered.

Chalfant became concerned that Tubb would produce a film based on the screenplay without plaintiffs' permission and Chalfant's attorney sent Tubb a cease-and-desist letter forbidding Tubb to use the screenplay.  After receiving the letter, Tubb called Chalfant and left a threatening message on his answering machine.  Chalfant returned Tubb's phone call, and informed Tubb that plaintiffs had agreed that Preston would have control over filming rights for the screenplay.  Plaintiffs had decided that both of them would be given screenwriting credit if a film was ever produced.  Chalfant also told Tubb that both plaintiffs would be entitled to compensation as part of any contract giving Tubb rights to produce a film based on the screenplay.  Preston allowed Tubb to begin production of the proposed film without a written contract between Tubb and plaintiffs. Tubb orally agreed that he would execute a contract with plaintiffs once the film was produced and he had located a

distributor.  Tubb specifically agreed not to seek any distribution rights until plaintiffs approved the distributor and the parties signed a contract solidifying plaintiffs' rights as owners of the screenplay.

Preston attended two viewing of an early version of the film in Los Angeles, California and Snyder, Texas, and clarified that both plaintiffs would have to be credited as coauthors of the screenplay.  Preston was more involved with the production of the film than Chalfant, participating as an actor in the film and assisting with production design.[1]  By 2002, Tubb informed Preston that he had still not found a distributor for the film.  However, in August 2004, Tubb filed applications for copyrights for the derivative screenplay of Blood Trail and the film itself.  Tubb listed Preston as a coauthor of the screenplay, but failed to mention Chalfant on the copyright application.  The application did not note that the screenplay for Blood Trail was a derivative work and omitted any reference to the screenplay written by Preston and Chalfant in 1995.   The applications were approved and Tubb received copyrights for the screenplay and film, numbers PAu2-887-903 and PAu2-860-135 respectively.

Tubb did not notify plaintiffs that he had received copyrights for the screenplay or film. Tubb hired Integration Entertainment, a California based company, to assist him in marketing and distributing Blood Trail.[2]  Tubb may have also provided Lions Gate Entertainment, Inc. ("Lions Gate") with copies of the film.  Plaintiffs contend they did not authorize Tubb to market Blood Trail. Plaintiffs believe that Tubb allowed either Integration Entertainment or Lions Gate to market the

---

[1]     Preston also contributed $8,000 in investment capital and provided props, such as saddles and leather clothing, for use during filming.

[2]     Plaintiffs claim that Integration Entertainment advertises on its website that it brokered a deal for the distribution of Blood Trail.

film, and state that the DVD of Blood Trail is now commercially available for rental and purchase. Plaintiffs provide a list of stores where the DVD is sold or rented.[3]

Plaintiffs claim that the final version of Blood Trail distributed by defendants contains large segments of dialogue lifted directly from plaintiffs' original screenplay, as well as the same characters and events taken from the original work.  Plaintiffs state that they have never received any compensation from defendants for use of their screenplay.  The DVD packaging of Blood Trail states that the film is a Madrugada Ranch production and that the screenplay was coauthored by Tubb and Preston.  Plaintiffs' complaint alleges five separate claims under the Copyright Act, violations of the Lanham Act, 15 U.S.C. 1125 et seq., as well as state law claims for fraud, constructive fraud, deceit, unfair trade practices, unfair competition, interference with prospective economic advantage, unjust enrichment, and breach of contract.

## II.

When reviewing a motion to dismiss under Rule 12(b)(6), the court must construe the allegations of the complaint as true and view the allegations in the light most favorable to the nonmoving party.  Moffett v. Halliburton Energy Services, Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  A Rule 12(b)(6) motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Sutton v. Utah State School for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

---

[3]     Plaintiffs claim that, in the Tulsa area, Blood Trail is sold at Wal-Mart, Blockbuster Video, Hollywood Video, Suncoast Video, Albertsons, and Reasors.

## III.

Plaintiffs have filed a motion to strike (Dkt # 42) exhibit B attached to defendants' reply.

Exhibit B is a letter from Chalfant to Tubb, dated April 8, 1996, which states:

> This letter is to state that my only role in "Blood Trail" is of a writer, and that I, Patrick Chalfant, co-owner of the copyright for the screenplay, "Blood Trail" have made a contractual agreement with R.J. Preston, co-owner of the copyright for the screenplay "Blood Trail." This contract gives Mr. Preston the filming rights to "Blood Trail." This contract also states that I am not, nor ever have been associated in any form with Madrugada Ranch Productions or the filming or fundraising of "Blood Trail."

Dkt. # 41, Ex. B. Tenth Circuit precedent is clear that a district court has the discretion to consider evidentiary materials attached to a motion to dismiss, or it may decline to consider material outside of the complaint. Prager v. LaFaver, 180 F.3d 1185, 1198 (10th Cir. 1999) ("We agree with our sister circuits that if a defendant attaches to a 12(b)(6) motion materials referred to by the plaintiff and central to his claim, the court has discretion to consider such materials." In Prager, the court found that the defendant's selected attachment of certain exhibits was over-inclusive and under-inclusive, and it was not an abuse of discretion for the district court to refuse to consider the attached documents. Id.

In this case, plaintiffs' complaint did not refer to any letter from Chalfant to Tubb, nor does this letter contain any information central to plaintiffs' allegations of copyright infringement. See United States Olympic Committee v. American Media, Inc., 156 F. Supp. 2d 1200, 1204-05 (D. Colo. 2001). Defendants' motion to dismiss did not refer to any evidence outside of the pleadings or request the Court to treat its motion as one for summary judgment. The Court has broad discretion to convert a motion to dismiss into a motion for summary judgment, but it will not do so in this case. See GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.

5

1997); <u>McCormick v. City of Lawrence</u>, 325 F. Supp. 2d 1191, 1195 (D. Kan. 2004).  If defendants intended to attach exhibits to their motion to dismiss, they should not have waited until they filed their reply to do so.  This essentially deprives plaintiffs of the opportunity to submit evidentiary exhibits or requires the Court to allow both parties additional time to submit additional evidence. <u>Price v. Philpot</u>, 420 F.3d 1158, 1167 (10th Cir. 2005).

Plaintiffs also argue that the letter submitted by defendants is likely to be taken out of context without additional evidence.  Based on defendants' motion to dismiss, it is clear that defendant disputes the factual allegations in plaintiffs' complaint; however, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is not the proper forum to raise these arguments.  The Court declines the opportunity to consider evidence outside of the pleadings, and finds that plaintiffs' motion to strike (Dkt. # 42) should be granted.

## IV.

Defendants have filed a motion to dismiss claiming that plaintiffs' complaint should be dismissed in its entirety or, in the alternative, that specific claims in the complaint should be dismissed.  Defendants argue that: (1) the Court does not have personal jurisdiction over defendants; (2) plaintiffs' complaint fails to state a claim for relief for copyright infringement; (3) plaintiffs' allegations are insufficient to entitle plaintiff to treble damages under the Lanham Act; (4) plaintiffs' state law claims are preempted by 17 U.S.C. § 301; (5) all of plaintiffs' state law claims are barred by the statute of limitations; and (6) plaintiffs' breach of contract claim is barred by the statute of frauds.

**A.**

Defendants[4] claim that they are not subject to the personal jurisdiction of the Court because they do not have sufficient minimum contacts with the state of Oklahoma.  Tubb claims that he is a resident of Texas, and that Madrugada is incorporated and has its principal place of business in Texas.  Plaintiffs' have the burden of establishing personal jurisdiction over defendants, but this burden is not heavy.  Intercon, Inc. v. Bell Atlantic Internet, 205 F.3d 1244, 1247 (10th Cir. 2000) ("Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists."); Doe v. National Medical Servs., 974 F.2d 143, 145 (10th Cir. 1992) ("Prior to trial, the plaintiff is only required to establish a prima facie showing of jurisdiction.").  The court must construe plaintiff's factual allegations as true.  Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988).

A court may only exercise jurisdiction over a defendant if the defendant has "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945).  The minimum contacts analysis protects a defendant's due process rights by preventing them from litigating in distant forum where they could not reasonably expect being haled into court. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980).  A court may assert specific jurisdiction over a defendant if "the defendant has 'purposefully directed' his

---

[4]     Defendants' motion to dismiss does not offer a separate jurisdictional analysis for Tubb and Madrugada.  Plaintiffs allege that Tubb is the owner of Madrugada, and capable of transacting business on its behalf.  Since defendants' motion does not dispute this, the Court will consider defendants' personal jurisdiction argument jointly.

activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).  Even if the defendant's contacts with the forum are not related to the litigation, personal jurisdiction may exist when the defendant has sufficient unrelated contacts with the state that it would be proper to assert in personam jurisdiction over him.  Helicopteros Nacionales de Columbia, S.A., v. Hall, 466 U.S. 408, 414 (1984).  Plaintiffs claim the Court has specific jurisdiction over defendants because defendants' contacts with Oklahoma were related to subject of this litigation.  Plaintiffs' must show that: (1) defendants purposefully availed themselves of the privilege of doing business in Oklahoma; and (2) that plaintiffs' claim arises out defendants' contacts with Oklahoma.  See OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1092 (10th Cir. 1998).

Oklahoma's long-arm statute permits the court to exercise personal jurisdiction "on any basis consistent with the Constitution of this state and the Constitution of the United States," so there is no need to perform a separate due process analysis under both state and federal law.  Fed. R. Civ. P. 4(k)(1)(A); Okla. Stat. tit. 12, § 2004(F); United States v. Botefuhr, 309 F.3d 1263, 1272 (10th Cir. 2002).  In this case, plaintiffs claim that Tubb initiated contact with plaintiffs by requesting to meet them in Oklahoma.  In November 1995,Tubb traveled to Preston's home in Fay, Oklahoma to discuss his proposal to produce a film using plaintiffs' screenplay.  After this meeting, Tubb frequently called Preston at his home to attempt to obtain rights to the screenplay.  Tubb returned to Oklahoma in 1996 and stayed at Preston's home for the purpose of working out a deal to start production of Blood Trail.  Tubb subsequently called plaintiffs to solicit rights to the screenplay and work out arrangements for filming the movie.  Over the next several years, Tubb maintained a relationship with Preston for the purpose of producing Blood Trail.

8

Evidence that a defendant solicited business or created a contractual relationship with a resident of a forum, while not conclusive, suggests that a defendant purposefully availed himself of the privilege of conducting business in the forum state. Pro Axess, Inc., v. Orlux Distribution, Inc., 428 F.3d 1270, 1277 (10th Cir. 2005); American Target Advertising, Inc. v. Giani, 199 F.3d 1241, 1256 (10th Cir. 2000). Even if defendants had never entered the state of Oklahoma, there is significant evidence that they purposefully sought out Oklahoma residents for business purposes and formed a continuing business relationship. Sheehan Pipe Line Const. Co. v. Laney Directional Drilling Co., 228 F. Supp. 2d 1271, 1276 (N.D. Okla. 2002). Tubb made at least two trips to Oklahoma to discuss the business relationship forming the subject of this lawsuit. Physical presence in the forum state is strong evidence that a defendant intended to subject himself to jurisdiction in the forum state. Burger King, 471 U.S. at 476. Plaintiffs' allegations are sufficient to make a preliminary showing that defendants purposefully availed themselves of the privilege of conducting business in Oklahoma.

It is clear that the litigation arises out of defendants' contacts with Oklahoma. Plaintiffs' allegations show that defendants solicited a business relationship with Oklahoma residents and that defendants intended to enter a long term business relationship with plaintiffs. Tubb frequently called both plaintiffs and visited Oklahoma at least twice to broker a deal for use of plaintiffs' screenplay. Preston allowed Tubb to begin production of a movie based on the screenplay with the intent the parties would enter a formal contractual relationship. The subject of this lawsuit is defendants' alleged failure to fulfill their end of the bargain and their wrongful use of the screenplay that he solicited plaintiffs' permission to use. Defendants' contacts with Oklahoma are clearly related to the subject of this litigation. Defendants have no legitimate basis to argue that they are not subject

9

to personal jurisdiction and their motion to dismiss for lack of personal jurisdiction is denied.

Defendants also argue that venue is not proper in this Court under 28 U.S.C. § 1400(a), which requires that copyright actions be filed in any venue where the defendant or his agent may be found.  Defendants argue that he is a resident of Texas, and that venue in the Northern District of Oklahoma is improper.  Under section 1400(a), a defendant may be "found" in any judicial district where he is subject to personal jurisdiction."  Palmer v. Braun, 376 F.3d 1254, 1260 (11th Cir. 2004); Waeltz v. Delta Pilots Retirement Plan, 301 F.3d 804, 809 (7th Cir. 2002); Varsic v. United States Dist. Ct. for Cent. Dist. of California, 607 F.2d 245, 248 (9th Cir. 1979).  The Court has already determined that it has personal jurisdiction over defendants.  Therefore, venue is proper in this Court.

## B.

Defendants assert that plaintiffs have not stated a claim for copyright infringement, because Preston, a coauthor of the original screenplay, authorized and participated in the creation of a derivative work.  According to defendants, the complaint states that Preston participated in the creation of a derivative work, and that this licensed defendants to use the derivative work without fear of liability to either Preston or Chalfant.  Defendants blatantly misconstrue the allegations of the complaint, and accepting those allegations as true, plaintiffs have stated claims for relief under the Copyright Act.

Plaintiffs allege that Preston provided Tubb a limited license to produce a film based on the screenplay with assistance from Preston, on the condition that any registration of the derivative work would include Chalfant and Preston as coauthors.  Plaintiffs expressly withheld permission to

distribute the film without authorization from plaintiffs.  Under 17 U.S.C. § 106, the owner of a

copyright has the exclusive authority:

> (1) to reproduce the copyrighted work in copies or phonorecords;

> (2) to prepare derivative works based upon the copyrighted work;

> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictoral, graphic, or scuptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

A copyright holder may grant a limited license for use of copyrighted material, and if the scope of

the license is exceeded, the owner of the copyright may sue for infringement.  LGS Architects, Inc.

v. Concordia Homes of Nevada, 434 F.3d 1150, 1156 (9th Cir. 2006); In re Microsoft Corporation

Antitrust Litigation, 333 F.3d 517, 534-35 (4th Cir. 2003).   In order to prevail on a claim for

copyright infringement, the plaintiff must prove two elements: (1) plaintiff was the owner of a valid

copyright; and (2) defendant copied protected components of the copyrighted material.  Feist

Publications, Inc. v. Rural Telephone Serv. Co., Inc., 499 U.S. 340, 361 (1991); Gates Rubber Co.

v. Bando Chemical Industries, Ltd, 9 F.3d 823, 831 (10th Cir. 1993).

Plaintiffs' claims for copyright infringement are based on the theory that defendants

exceeded the scope of the license Preston granted to Tubb.  Plaintiffs' complaint states that Preston

assisted Tubb in the creation of a screenplay and a film based on the screenplay, but that Preston

11

never authorized Tubb to distribute the film without permission from plaintiffs.  This type of limited license is permissible, and plaintiffs may proceed on this theory as long as they state a valid claim for copyright infringement.  <u>Sun Microsystems, Inc. v. Microsoft Corp.</u>, 188 F.3d 1115, 1121 (9th Cir. 1999); <u>Quintanilla v. Texas Television Inc.</u>, 139 F.3d 494, 500 (5th Cir. 1998).  Plaintiffs have alleged that they were joint owners of a copyrighted screenplay and that defendants distributed protected material without authority from plaintiffs.

Defendants argue that they can not be sued for copyright infringement, because their actions were authorized by Preston, a joint owner of the original copyright.  Joint owners of a copyright are treated as coowners, and either owner has the authority to grant permission to distribute, reproduce or create derivative works based on the copyrighted material.  17 U.S.C. § 201; <u>Weissmann v. Freeman</u>, 868 F.2d 1313, 1318 (2d Cir. 1989); <u>Weinstein v. University of Illinois</u>, 811 F.2d 1091, 1095 (7th Cir. 1987).  However, this legal principle does not insulate defendants from liability.  Tubb exceeded the scope of the limited authority granted to him, and neither plaintiff relinquished his control over the creation of a derivative work.  While Tubb may have had limited authority to produce a film based on the original screenplay, he did not have authority to distribute the film without including both plaintiffs as coauthors and entering a contract to compensate their plaintiffs for use of their screenplay.  Defendants may dispute the scope of their authority from Preston, but that is not an issue the Court may resolve on a motion to dismiss.  Plaintiffs have stated a claim for copyright infringement of the limited license Preston granted Tubb, and the Court will not dismiss plaintiffs' copyright infringement claims.

## C.

Plaintiffs have filed a claim under the Lanham Act, 15 U.S.C. § 1125, alleging that defendants intentionally omitted Chalfant's name as a coauthor of the derivative screenplay and film of Blood Trail.  Defendants claim that plaintiffs' claim is precluded by Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003), where the Supreme Court held that the Lanham Act did not allow an author to bring a claim under the Lanham Act for failing to give credit for uncopyrighted material, because such a broad reading of the phrase "origin of goods" in 15 U.S.C. § 1125 would create a perpetual right to bring a copyright claim long after the copyright expired. Id. at 37-38.  Defendants argue that under Dastar they are the producers of the screenplay and film, and that as the "producer of the tangible product sold in the marketplace" they are the origin of the film Blood Trail. Id. at 38.  Dastar clarified that, under the Lanham Act, the alleged injury "must be a *trademark* loss--which is to say, it must come from a misrepresentation of the goods' origin." Bretford Mfg., Inc. v. Smith System Mfg. Corp., 419 F.3d 576, 580 (7th Cir. 2005).

Plaintiffs argue that Dastar does not preclude claims for misleading advertising and promotional activities.  The Supreme Court specifically left open the possibility that certain false authorship claims could be pursued as false advertising claims under the Lanham Act.  See Daster, 539 U.S. at 38; Zyla v. Wadsworth, 360 F.3d 243, 252 n.8 (1st Cir. 2004).  In Dastar, the Court stated:

> If, moreover, the producer of a video that substantially copied the Crusade series were, in advertising or promotion, to give purchasers the impression that the video was quite different from that series, then one or more of the respondents might have a cause of action-nor for reverse passing off under "confusion . . . as to the origin" provision of § 43(a)(1)(A), but for misrepresentation under the "misrepresents the nature, characteristics [or] qualities" provision of § 43(a)(1)(B).

Dastar, 539 U.S. at 38.  The focus of the Court's analysis in Dastar was on whether the consumer would be confused by a misleading trademark, not whether the alleged creator would be harmed by misleading advertising.  McBee v. Delica Co., Ltd., 417 F.3d 107, 121 (1st Cir. 2005); Empresa Cubana del Tabaco v. Culbro Corp., 399 F.3d 462, 478 (2nd Cir. 2005).

Plaintiffs do not allege that the consumer would be harmed by misleading representations on the packaging of Blood Trail, but that the false or misleading advertising by defendants have harmed Chalfant by omitting his name from the packaging.  Under the reasoning of Dastar, the Court finds that plaintiffs' rights are adequately protected by the copyright laws, as they do not allege that there is any potential  risk of confusion to consumers.  Defendants and Preston are the origin of the derivative screenplay and film of Blood Trail under the Lanham Act, even if the misleading packaging fails to credit Chalfant for his creative efforts.  Therefore, plaintiffs' claim for relief under the Lanham Act should be dismissed.

## D.

Defendants claim that plaintiffs' state law claims are preempted by the Copyright Act. Plaintiffs respond that their state law claims are not preempted under the "additional element" analysis utilized by the Tenth Circuit to resolve preemption issues under the Copyright Act.  The Copyright Act, 17 U.S.C. § 301, states that:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by section 102 and 103, whether created before or after that date and whether published or unpublished, are governed by this title.

However, the Copyright Act does not preempt any claims alleging "activities violating legal or equitable rights that are not equivalent to any of the exclusive rights with the general scope of

14

copyright as specified by section 106." <u>Id</u>.   The Tenth Circuit has created a two-part test to determine preemption issues under the Copyright Act, finding state law claims preempted if: "(1) the work is within the scope of the 'subject matter of copyright' as specified in 17 U.S.C. §§ 102 and 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106."   <u>Gates Rubber Co. v. Bando Chemical Indus.</u>, <u>Ltd.</u>, 9 F.3d 823, 847 (10th Cir. 1993).   Applying this test, if the state law claim requires an additional element beyond the elements of a copyright infringement claim, the state law claim is not preempted.   <u>Id</u>.

Plaintiffs have filed state law claims for unfair competition, deceptive trade practices, fraud, constructive fraud, deceit, interference with a prospective economic advantage, unjust enrichment, and breach of contract.   Tenth Circuit precedent requires the Court to consider each claim separately and compare the elements of each claim; the Court may look at the proof necessary to prove each claim to determine if the state law claim is "qualitatively distinguishable" from the protection afforded to plaintiffs under copyright law.   <u>Harold Stores, Inc. v. Dillard Dept. Stores, Inc.</u>, 82 F.3d 1533, 1544 (10th Cir. 1996).   In order to survive preemption, the state law claim must include an element beyond the two elements of a copyright infringement claim, which are: (1) plaintiff was the owner of a valid copyright; and (2) defendant copied protected components of the copyrighted material. <u>See</u> <u>Feist Publications, Inc.</u>, 499 U.S. at 361.

The tort of unfair competition requires plaintiffs to prove that defendants engaged in deception for the purposes of misleading a consumer about the identity of the producer of goods or services.   <u>National Nu Grape Co. v. Guest</u>, 164 F.2d 874, 877 (10th Cir. 1947).   This tort is broader than trademark or copyright law, and a showing that defendant misappropriated the product of

15

another is not enough.  Coca-Cola Co. v. Cahill, 350 F. Supp. 1231, 1233 (W.D. Okla. 1972).

Plaintiffs have alleged that defendants engaged in deceptive trade practices, which is not an element

of a copyright claim.  Other courts that have considered preemption of unfair competition claims

have not found these claims preempted by the Copyright Act.  See Samara Bros., Inc. v. Wal-Mart

Stores, Inc., 165 F.3d 120, 132 (2d Cir. 1998); A & M Records, Inc. v. M.V.C. Distributing Corp.,

574 F.2d 312, 314 (6th Cir. 1978).  Based on plaintiffs' allegations that defendants' conduct went

beyond mere appropriation of copyrighted material and included elements of deceptive behavior,

the Copyright Act does not preempt plaintiffs' state law claim for unfair competition.  This finding

also saves plaintiffs' statutory unfair trade practices claim from preemption, because deception is

the key element of any claim under the Deceptive Trade Practices Act, Okla. Stat. tit. 78, § 51 et seq.

Plaintiffs' claims for fraud, constructive fraud, and deceit all require allegations that

defendants made a material misrepresentation or intentionally concealed a material fact upon which

plaintiffs relied to their detriment.  See Howell v. Texaco, Inc., 112 P.3d 1154, 1161 (Okla. 2005);

Bourke v. Western Business Products, Inc., 120 P.3d 876, 887 (Okla. Civ. App. 2005); Worsham

v. Nix, 83 P.3d 879, 883 (Okla. Civ. App. 2003).  Courts have found that fraud claims require

additional evidence of fraudulent intent that is not part of a prima facie case for copyright

infringement.  Valente-Kritzer Video v. Pinckney, 881 F.2d 772, 776 (9th Cir. 1989); Hustlers Inc.

v. Thomasson, 253 F. Supp. 2d 1285, 1293 (N.D. Ga. 2002); Tracy v. Skate Key, Inc., 697 F. Supp.

748, 751 (S.D.N.Y. 1988).  Plaintiffs' fraud claims partially relate to their copyright infringement

claim, to the extent that defendants materially misrepresented their intention to enter a contract to

share profits resulting from the distribution of Blood Trail.  However, there are additional allegations

16

that Preston was induced to contribute investment capital and services to the film. Plaintiffs' fraud, constructive fraud and deceit claims are not preempted by the Copyright Act.

Breach of contract claims will not generally be preempted by the section 301 of the Copyright Act. Wrench LLC v. Taco Bell Corp., 256 F.3d 446 (6th Cir. 2001); Acorn Structures, Inc. v. Swantz, 846 F.2d 923, 926 (4th Cir. 1988); Hustlers Inc., 253 F. Supp. 2d at 1293. However, if the contract at issue relates to the use of copyrighted material or provides defendant rights in the subject matter at issue in a copyright infringement claim, the contract claim may be preempted. Evolution, Inc. v. SunTrust Bank, 342 F. Supp. 2d 943, 960 (D. Kan. 2004). In this case, plaintiffs allege that they gave Tubb limited rights to produce a film based on their screenplay and that the details of the contract would be worked after a distributor was found. Using the two part test in Gates Rubber, the subject matter of the contract was within the scope of the Copyright Act, because the contract specifically granted Tubb limited use of the screenplay, and the remedy afforded by state law for breach of contract is comparable to the remedies authorized by the Copyright Act. However, the Court must also consider the "additional element" test. Plaintiffs convincingly argue, and the weight of authority supports, that the promise and consideration elements qualitatively distinguish breach of contract claims from copyright infringement cases. Wrench LLC, 256 F.3d at 456; National Car Rental Systems, Inc. v. Computer Assoc. Int'l, Inc., 991 F.2d 426, 431 (8th Cir. 1993); Taquino v. Teledyne Monarch Rubber, 893 F.2d 1488, 1501 (5th Cir. 1990). Plaintiffs' claim for breach of contract is not preempted by section 301.

Plaintiffs have filed a claim for tortious interference with prospective economic advantage, which requires plaintiffs to prove that:

17

the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted.

Boyle Serv., Inc. v. Dewberry Design Group, Inc., 24 P.3d 878, 881 (Okla. Civ. App. 2001).

Plaintiffs argue that this claim includes the extra element of bad faith intent, preventing preemption

of this claim.  See U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d 158, 174 n.10 (S.D.N.Y.

2001).  However, most courts have rejected the argument that intent is an extra element that would

save a state law claim from preemption.  See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373

F.3d 296 (2d Cir. 2004); Foley v. Luster, 249 F.3d 1281, 1285 (11th Cir. 2001); Huckshold v. HSSL,

LLC, 344 F. Supp. 2d 1203, 1208 (E.D. Mo. 2004).  Without the additional element of intent,

plaintiffs' copyright infringement and tortious interference claims are virtually identical.  Plaintiffs

allege that they had an expectancy of economic advantage from sale of the screenplay and film of

Blood Trail.  Plaintiffs also allege that film credits for Blood Trail would have led to other

opportunities to author screenplays.  These allegations fall squarely within the subject matter

covered by the Copyright Act and the remedies provided by state law would compensate plaintiff

for the same harm as the Copyright Act.  Plaintiff points to no other additional element besides

intent that would distinguish a tortious interference claim from a copyright infringement claim, and

the Court finds it may not consider intent as an additional element.  Therefore, plaintiffs' claim for

tortious interference with prospective economic advantage should be dismissed.

Lastly, plaintiffs claim defendants were unjustly enriched because plaintiffs provided a valuable service to defendants for which plaintiffs were not compensated.  Plaintiffs argue that they have asserted a separate factual basis for this claim and it is not preempted by section 301.[5]  Preston alleges that he provided production services and investment capital which Tubb used to produce the film, and that he (Preston) had a reasonable expectation of being compensated for his services.  If plaintiffs' claim for unjust enrichment was solely based on Tubb's unfair economic gain from violating plaintiffs' copyright, it would be preempted.  Del Madera Properties v. Rhodes & Gardner, Inc., 820 F.2d 973 (9th Cir. 1987); Ehat v. Tanner, 780 F.2d 876, 878 (10th Cir. 1985); Weber v. Geffen Records, Inc., 63 F. Supp. 2d 458, 463 (S.D.N.Y. 1999).  However, plaintiffs have asserted a distinct factual basis for this claim which does not overlap with plaintiffs' copyright claims. Therefore, the Court will not dismiss plaintiffs' claim for unjust enrichment.

### E.

Defendants argue that plaintiffs' state law claims are barred by the applicable statute of limitations.  Defendants assert that the statute of limitations began to run on all of the state law claims when Tubbs initially approached plaintiffs about producing a film based on Blood Trail.  The statute of limitations for fraud, constructive fraud, and deceit is two years under Okla. Stat. tit. 12, § 95(A)(3), and the statute of limitations for unjust enrichment, breach of oral contract, unfair competition, and deceptive trade practices is three years under section 95(A)(2).  The statute of limitations begins to run when plaintiff can first maintain an action to a successful conclusion.

---

[5]     Plaintiffs admit that, if their unjust enrichment claim were simply based on Tubb's economic benefit from distributing the film, section 301 would preempt this claim.

19

McCain v. Combined Commc'n Corp. of Oklahoma, Inc., 975 P.2d 865, 867 (Okla. 1998); Moore v. Delivery Serv., Inc., 618 P.2d 408, 409 (Okla. Civ. App. 1980).

Defendants did not successfully distribute Blood Trail until 2005, and plaintiffs were not aware of the alleged unauthorized activities until they discovered that copies of the film were commercially available.  Plaintiffs did not have tort claims until defendants actually distributed the film, because plaintiffs allegations of fraud, deceit, constructive fraud, unfair competition, deceptive trade practices, and unjust enrichment did not accrue until the film was actually sold in the marketplace.  If defendants had not completed the act of selling the film to a distributor, these torts would not have occurred.  The Court also finds that plaintiffs could not reasonably have discovered they had a claim until defendants distributed the film and copies of Blood Trail were commercially available.  Tice v. Pennington, 30 P.3d 1164, 1168 (Okla. Civ. App. 2001) ("According to the Rule of Discovery, the Statute of Limitations in tort actions does not preclude vindication of a right until such time as the person knows, or in the exercise of due diligence, should have known that the right existed.").  Plaintiffs have sufficiently pled that they had no knowledge that Tubb had located a distributor for the film or that Tubb was in contact with Lions Gate and Integration Entertainment.  Before 2004, Tubb repeatedly assured both plaintiffs that he had not found a distributor and, in 2002, Tubb informed plaintiffs he was not hopeful of ever finding a distributor.  Tubb can not make affirmative representations that the film was unlikely to be sold, but simultaneously assert that the statute of limitations was running out on claims for unlawfully distributing Blood Trail.  Digital Design Group, Inc. v. Information Builders, Inc., 24 P.3d 834, 840-41 (evidence that defendant concealed evidence giving rise to claim relevant to court's application of the discovery rule).

20

Based on the allegations in plaintiffs' complaint, the Court will not dismiss plaintiffs' state law claims under the statute of limitations.

## F.

Defendants claim that the statute of frauds bars plaintiffs' breach of contract claim, because an oral contract that may not be fully completed in one year is unenforceable. Oklahoma recognizes the general principle that "an [oral] agreement that, by its terms, is not to be performed within a year from the making thereof" is not actionable. Okla. Stat. tit. 15, § 136. A contract that provides express dates extending beyond one year from the execution of the contract must be in writing. Funk v. Anderson-Rooney Operating, Inc., 423 P.2d 465, 467 (Okla. 1966). Contracts that are for an indefinite duration are not subject to this rule. Krause v. Dresser Indus., Inc., 910 F.2d 674, 679 (10th Cir. 1990). The year contemplated by the statute of frauds does not begin to run until both parties agree to the contract. Sosbee v. Clark, 207 P. 732 (Okla. 1922). The court should void a contract under the statute of frauds only if the clear understanding of the parties was that the contract would not be performed within one year. Municipal Gas Co. v. Gilkeson, 16 P.2d 247, 249 (Okla. 1932).

Plaintiffs' allegations suggest that the oral contract at issue was for an indefinite duration, and that the parties did not expressly consider the length of their proposed business relationship. Although the Tenth Circuit finds Oklahoma law to be somewhat unclear, that court has interpreted Oklahoma law to exclude contracts of indefinite duration from the statute of frauds. Krause, 910 F.2d at 674; see also Cherokee Laboratories, Inc. v. Pierson, 415 F.2d 85, 92 (Okla. 1969). Because the complaint is unclear whether the parties intended to enter an agreement that could not be

completed within one year, the Court will not dismiss plaintiffs' breach of contract claim under the statute of frauds.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Strike (Dkt. # 42) is **granted**; and Defendants' Motion to Dismiss (Dkt. # 17) is **granted in part** and **denied in part**:  it is **granted** as to plaintiffs' claims under the Lanham Act (claim # 6) and for tortious interference with prospective economic advantage (claim # 12); it is **denied** in all other respects.

**DATED** this 28th day of August, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT